AO 440 (Rev. 02/09)  Summons in a Civil Action

*E-filing*

*CRB*

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

JOHN KEELER, Individually and on
Behalf of All Others Similarly Situated,

*Plaintiff*

v.

BARE ESCENTUALS, INC., LESLIE A.
BLODGETT and MYLES B. MCCORMICK,

*Defendant*

)
)
)
)
)
)
)
)
)

# CV 09   3492

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  BARE ESCENTUALS, INC., LESLIE A. BLODGETT and MYLES B.
MCCORMICK
71 Stevenson Street, 22nd Floor
San Francisco, CA 94105

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Lionel Z. Glancy
Michael Goldberg
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RICHARD V. WIEKING

*CLERK OF COURT*

JUN 2 9 2009

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

ANNA S.PRINKLES

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

JOHN KEELER, Individually and on Behalf of All Others Similarly Situated,

**DEFENDANTS**

BARE ESCENTUALS, INC., LESLIE A. BLODGETT and MYLES B. MCCORMICK

**(b)** County of Residence of First Listed Plaintiff **Grady County, OK**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
       LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael Goldberg (#188669)
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067 T: 310/201.9150

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☒ 3  Federal Question
     (U.S. Government Not a Party)

☐ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                        and One Box for Defendant)

|                                                    | PTF | DEF |                                                         | PTF | DEF |
|----------------------------------------------------|-----|-----|---------------------------------------------------------|-----|-----|
| Citizen of This State                              | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                           | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country            | ☐ 3 | ☐ 3 | Foreign Nation                                          | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|--------------------|-----------|----------------|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury – Med. Malpractice<br>☐ 365 Personal Injury – Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities – Employment<br>☐ 446 Amer. w/Disabilities – Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §§ 78j(b) and 78t(a)
Brief description of cause:
Violations of Securities Exchange Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23      DEMAND $ 0

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND          ☐ SAN JOSE

DATE
July 29, 2009

SIGNATURE OF ATTORNEY OF RECORD

FILED BY FAX
PURSUANT TO LOCAL RULES

LIONEL Z. GLANCY #134180
MICHAEL GOLDBERG #188669
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
info@glancylaw.com

*E-filing*

**ORIGINAL FILED**

JUL 29 2009

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for Plaintiff John Keeler
*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**CRB**

**CV 09 3492**

| | |
|---|---|
| JOHN KEELER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BARE ESCENTUALS, INC., LESLIE A. BLODGETT and MYLES B. MCCORMICK,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**Jury Trial Demand** |

Plaintiff John Keeler, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Bare Escentuals, Inc. ("Bare Escentuals" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Bare Escentuals; and (c) review of other publicly available information concerning Bare Escentuals.

FILED BY FAX
PURSUANT TO LOCAL RULES

**NATURE OF THE ACTION**

1.      This is a securities class action on behalf of purchasers of the common stock of Bare Escentuals between November 7, 2006 and November 26, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this District.

5.      In connection with the acts, transactions, and conduct alleged herein, defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

6.      Plaintiff John Keeler, as set forth in the accompanying certification incorporated by reference herein, purchased Bare Escentuals common stock  during the Class Period and has been damaged thereby.

7.      Defendant Bare Escentuals is a Delaware corporation that maintains its

principle executive offices at 71 Stevenson Street, 22nd Floor, San Francisco, California. The Company, together with its subsidiaries, develops, markets and sells cosmetics and skin-and body-care products under the bareMinerals, RareMinerals, Buxom, and md formulations brands.

8.     Defendant Leslie A. Blodgett ("Blodgett") was, at all times relevant hereto, Chief Executive Officer of Bare Escentuals.

9.     Defendant Myles B. McCormick ("McCormick") was, at all times relevant hereto, Chief Operations Officer, Chief Financial Officer, Executive Vice President and Secretary of Bare Escentuals.

10.     Defendants Blodgett and McCormick are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Bare Escentuals' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

# SUBSTANTIVE ALLEGATIONS

11.     Defendant Bare Escentuals describes itself as "one of the leading prestigecosmetic companies in the United States and an innovator in mineral-based cosmetics. The Company develops, markets and sells cosmetics, skin care, and body care products worldwide under the bareMinerals, RareMinerals, Buxom and md formulations brands.

12.     On November 7, 2006, the first day of the Class Period, Bare Escentuals issued a press release announcing its financial results for the third fiscal quarter ended October 1, 2006.  The Company reported net sales of $97.9 million and net income of $8.9 million, or $0.12 per diluted share on approximately 73.5 million shares outstanding. The press release included comments by Defendant Blodgett, stating in pertinent part as follows:

> We are very pleased with the results achieved during the third quarter of fiscal 2006. Our strong performance reflects Bare Escentuals' continued growing brand awareness and the increasing consumer demand for our mineral-based products, and is a testament to the hard work and dedication of our entire organization. We at Bare Escentuals are extremely grateful for the loyalty and passion of our Bare Escentuals community, who helped us win our second consecutive Glamour magazine Glammy Award for Best Prestige Foundation.
>
> We are delighted to have successfully completed our initial public offering and we are extremely excited about our prospects for the future. Bare Escentuals pioneered the mineral-based cosmetics category and we believe that our leading market position, coupled with our solid relationships with our customers and reinforcing multi-channel distribution strategies, provides us with multiple long-term growth opportunities, both domestically and internationally. We plan to continue to selectively broaden our distribution and further increase brand awareness through media and customer-focused events.

The November 7, 2006 press release stated the following with regard to the Company's 2007 revenue guidance:

> For the fourth quarter of fiscal 2006, the Company expects sales to grow in the range of 28% to 33% from the same period last year and diluted earnings per share to be in the range of $0.12 to $0.13 on approximately 92.5 million shares outstanding. The Company expects sales for fiscal 2007 to grow in the range of 18% to 22% compared to fiscal 2006 and

diluted earnings per share to be in the range of $0.81 to $0.86 on approximately 92.6 million shares outstanding.

13.    On February 28, 2007, Bare Escentuals issued a press release announcing its financial results for the fourth quarter and fiscal year ended December 31, 2006. The Company reported net sales of $110.5 million and net income of $16.3 million, or $0.18 per diluted share on approximately 92.0 million shares outstanding. The press release included comments by Defendant Blodgett, who stated, in pertinent part, the following:

> We are extremely pleased with our performance for the fourth quarter and fiscal 2006. The Bare Escentuals brand continues to flourish due to the amazing support of our customers, partners, and employees. We plan to continue this momentum into 2007 with the launch of innovative new products and the expansion of our distribution channels both here and abroad. In addition, we'll be launching a nationwide tour to connect directly with our customers in order to ensure we're doing everything we can to exceed their expectations.

The February 28, 2007 press release stated the following with regard to the Company's 20007 revenue guidance:

> The Company now expects fiscal 2007 diluted earnings per share to be in the range of $0.84 to $0.89 on approximately 92.6 million shares outstanding. This change represents an increase of $0.03 over the prior earnings guidance.

14.    During a conference call with investors and analysts, held to discuss the Company's financial performance, the Company's President of Wholesale Sales, Diane Miles ("Miles"), stated the following:

> Our products, our marketing and our merchandising is translating well in all of our channels. Our infomercial business ended the year at +33% over '05. Our infomercial continues to be key for creating awareness and educating the customer on the efficiency of our product. In 2006, our infomercial was shown over 540 times a week, which equates to 28,000 times a year. At this point, we're happy with our existing level of exposure as it relates to the current frequency of our airing. Hence, we expect only a modest growth in our media time for 2007. Our focus, therefore, will be further leverage of our existing brand awareness through a strategic expansion in bricks and mortar.
>
> * * *
>
> As with the infomercial, we are very comfortable with our existing on-air presence and thus, we anticipate modest growth in 2007 with

emphasis upon growing internet and improving continuity in this channel.

\* \* \*

Okay, so just on the infomercial, we're growing some and done back end but probably growing back end faster than front end. So with the media spend, we're still attracting new customers. And then with the continuity, that's consistently growing as we increase the number of customers on our database.

15.    On March 13, 2007, Bare Escentuals issued a press release announcing the "pricing of a public offering of 12,000,000 shares of its common stock at a price to the public of $34.50 per share. Of these shares, 575,000 shares of common stock were to be sold by Bare Escentuals and 11,425,000 shares of common stock were to be sold by certain stockholders of the Company, including funds affiliated with Berkshire Partners LLC, funds affiliated with JH Partners, LLC and certain members of Bare Escentuals' management. In addition, certain of the selling stockholders have granted the underwriters an option to purchase up to an additional 1,800,000 shares at the public offering price."

16.    On May 2, 2007, Bare Escentuals issued a press release announcing its financial results for the first fiscal quarter ended April 1, 2007.   The Company reported net sales of $115.6 million and net income of $20.4 million, or $0.22 per diluted share on approximately 92.6 million shares outstanding. Commenting on the Company's performance during the quarter, Defendant Blodgett stated the following:

The first quarter of 2007 was a very good quarter for the company and a continuation of the strong growth we delivered in 2006. While our sales and earnings speak to our outstanding performance, it is the strength of our brand and dedication of our customers that genuinely reflect our success. As we expand distribution channels worldwide, we remain committed to providing the highest quality bareMinerals products and customer service, as well as maintaining our brand excellence and industry leadership.

The May 2, 2007, press release stated the following with regard to the Company's 2007 revenue guidance:

Based on stronger-than-expected first quarter results, Bare Escentuals

expects fiscal 2007 diluted earnings per share to be in the range of $0.89 to $0.94 on approximately 93.2 million shares outstanding. This change represents an increase of $0.05 over the prior earnings guidance. The Company continues to anticipate that earnings will be weighted toward the second half of fiscal 2007.

17.   Also on May 2, 2007, the Company held a conference call with investors and analysts to discuss the Company's first quarter financial performance. During the call, the following exchange occurred:

> We are also very excited to announce that we are launching our fifth bareMinerals infomercial this month. For the past five years the infomercial has been a key channel for us to market, educate, and acquire customers and we have taken our collective learning's to produce our highest quality infomercial to date.
>
> We believe this latest edition better demonstrates the connection we have with our customers and the contagious excitement surrounding Bare Escentuals.
>
> It includes some terrific footage of in-store events at our boutiques and at our prestige partners such as Sephora. And the testimonials manage to get better and better as we continue to use the voice of our customers to help educate and generate brand awareness.
>
> * * *
>
> **Lori Scherwin (Goldman Sachs analyst)**: And then just lastly, you mentioned a change in the infomercial and I was just curious, Leslie, what you've seen in the last four times you upgraded the infomercial. Did it really result in an up tick in sales or was it just sort of reenergizing the media?
>
> **Leslie Blodgett (Bare Escentuals CEO)**:  Yes, we do see an upside in sales and every time we do a new infomercial it's a completely different looking show from many aspects. And the offer changes as well. So even people, I believe, who bought into the other one might want to try the new offer as well.
>
> And, yes, we've included RareMinerals as a free gift in this infomercial too and that's a great value and a great way to sample our new exciting night treatment.

18.   On June 5, 2007, Bare Escentuals issued a press release reaffirming its fiscal year 2007 guidance and announcing anticipated full-year fiscal 2007 diluted earnings between $0.89 and $0.94 per share on approximately 93.2 million shares outstanding. The press release stated the following with regard to the Company's

second quarter revenue guidance:

> In addition, Bare Escentuals provided quarterly guidance for the second quarter of fiscal 2007. For its second fiscal quarter ending June 30, 2007, the Company anticipates fully diluted earnings to be between $0.20 and $0.22 per share. For the second quarter of fiscal 2007, total sales growth versus the prior year is expected to be in the range of 27% to 30% as the Company continues to experience strong consumer demand for its products. On a channel basis, year-over-year sales growth for the second quarter of fiscal 2007 is expected to be in line with first quarter growth rates, with the exception of the Infomercial channel which is expected to be flat relative to prior year. The Company continues to expect modest growth in infomercial sales in fiscal 2007.

19.     On June 13, 2007, Bare Escentuals issued a press release announcing the "pricing of a public offering of 8,000,000 shares of its common stock at a price to the public of $36.50 per share. Of these shares, 100,000 shares of common stock were to be sold by Bare Escentuals and 7,900,000 shares of common stock were to be sold by certain stockholders of the Company, including funds affiliated with Berkshire Partners LLC, funds affiliated with JH Partners, LLC and certain members of Bare Escentuals' management. In addition, certain of the selling stockholders have granted the underwriters an option to purchase up to an additional 1,200,000 shares at the public offering price."

20.     Throughout the Class Period, Bare Escentuals made filings with the SEC on, among other things, Forms 10-K and 10-Q, which contained positive statements about the Company's business.

21.     Defendants' statements described above were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which defendants knew or recklessly disregarded, including that:

(a)     the Company's infomercial business was not performing according to internal expectations and would need to be substantially revamped;

(b)     the Company's new infomercial had led to an immediate decrease

in sales and was not performing to internal expectations; and

         (c)     as a result, the Company's growth rate would be slowing from historical growth rates.

        22.    On August 1, 2007, Bare Escentuals issued a press release announcing the Company's financial results for the second fiscal quarter ended July 1, 2007. The Company reported net sales of $124.1 million and net income of $20.2 million, or $0.22 per diluted share on approximately 93.1 million shares outstanding. The press release included comments by Defendant Blodgett, who stated the following with regard to the Company's financial performance:

> Our performance in the second quarter demonstrates the strength and breadth of our multi-channel business model. We achieved sales growth of 29% as we developed more points of distribution and satisfied the growing consumer demand for our products worldwide. We are excited about our prospects and believe that Bare Escentuals is well-positioned to continue to build upon our market leadership and brand excellence.

The August 1, 2007, press release further stated the following with regard to the Company's 2007 revenue guidance:

> Bare Escentuals is reaffirming its previously issued fiscal 2007 guidance of diluted earnings per share in the range of $0.89 to $0.94 on approximately 93.2 million shares outstanding.

        23.    Also on August 1, 2007, the Company held a conference call with investors and analysts held to discuss the Company's second quarter financial results, Defendant Blodgett stated the following with regard to the Company's infomercial business:

> The quarter was not without its challenges, however, as the latest version of our infomercial failed to perform to our expectations. The infomercial has been a key channel for us to market, educate and acquire customers, and we are committed to getting this business back on track. From our experience, we know that updating and improving the infomercial is an ongoing process, but we are focused on getting it right in order to build our business for the long term.

> With respect to our infomercial business the second quarter was clearly challenging, as sales were down slightly versus the prior year. In May, we launched the fifth version of our bareMinerals infomercial. Despite

high expectations based on the show's updated testimonials and creative content, sales were immediately below our expectations. We responded by testing various re-edits of the show while reallocating the bulk of our media then to the previous version of the infomercial.

While this approach stabilized results and provided a lift over the new show's initial performance, results still are not where we need them to be. As a result, in June, we conducted customer research to determine which aspects of the show were and were not resonating with our customers. Based on that feedback, we have since re-shot certain scenes and will be testing versions of the new show which includes this footage in August and September.

At the same time, we have conducted an in-depth analysis of consumer behavior within this channel in order to determine to what extent broader economic factors might be impacting the buying decision of this infomercial customer.

We believe that we have considerable more insight into the situation than we did two months ago and we're optimistic that we're taking the corrective steps to improve performance. That said, we think it's prudent to be conservative in our forecasting at this stage, especially given the more difficult year-over-year comparisons in the second half of the year. We are therefore assuming that the infomercial business will be down approximately 10% in the second half of the year.

24.     Also during the conference call, the following exchange occurred:

**Jim Duffy (Thomas Weisel Partners analyst)**: I guess I'm confused. So what's changed in the infomercial business since the press release in early June when you thought it would be up modestly for the year?

**Diane Miles (President, Bare Escentuals)**:  When we said that, we were actually doing some re-editing on our version five. When we did that re-editing, we did get some traction but not what we really needed. So then that led us to, as I said before, the consumer research, the dial testing. Then we did some re-shooting and we're now continuing to edit and test and it's just taking a long time to test all the different permutations and combinations. So rather than trying to be overly optimistic, we want to give some realistic projections for the fall, because we just don't know how long the editing and testing will take in order to get the traction that we need.

**Jim Duffy (Thomas Weisel Partners analyst)**: I see. So, you indicated that there was a slight pick up from May to June and yet your new guidance seems to imply further deceleration in the infomercial business into Q3 and Q4. Is that just being conservative or do you expect some other external factors to have an impact?

**Myles McCormick (Bare Escentuals CFO & COO)**:  Well, I think it's a couple of things, Jim. One, it certainly is trying to be realistic relative

to the timing of some of our editing processes here, as getting into the shoots is taking a bit longer than we had originally expected. But sort of more of the larger impact, frankly, has to do with an increase in comparables in the back half of the year against Q4 in the prior year where we had incremental sort of media spend against it in the prior year. On a sequential basis, you'll see a slight decline, or what I view today is that we see a slight decline between Q2 and Q3, but between Q3 and Q4 it'll roughly flat from a $9 million perspective. The decline on year-over-year is frankly more representative, more difficult comparison in the prior year than sequential declines being expected in the current year.

25.     Later during the August 1, 2007 conference call, Defendant McCormick stated the following with regard to the Company's infomercial business:

**Janet Kloppenburg (JJK Research analyst):** Hey Myles. Just to elaborate on that. So it sounds to me like perhaps the infomercial run rate has worsened from June to July and do you attribute that to some of the disruption or the testing, or do you think that's just more of consumer falloff? And then with respect to the SG&A stands in the third quarter, is some of that incremental spend related to the testing of the new infomercial, or is this more just on the hiring that we had talked about, Myles, where some of it didn't get done in the first half and it's being shifted as you see the higher is in the back half. And maybe you could talk a little bit about what you meant about the earnings being SKU'd to the fourth quarter. Thanks.

**Myles McCormick (CFO & COO):**   In terms of the SG&A, it absolutely has to do with the organization building; much less to do with the incremental investment on the infomercial side. In terms of the infomercial business altogether, it's not as much as a deceleration between June and July as it was a deceleration between frankly April and June itself and losing April out of the quarter and getting into a run rate of June. As I said before, we've been able to stabilize the business and see incremental improvement on the original V5. That's not to the degree that we had hoped we'd see, so the subsequent shots and the tests coming up here. So it's much more to do with current run rate today than anything else.

**Janet Kloppenburg (JJK Research analyst):**  I'm confused then, Myles. Maybe you can help me understand. I thought you said it had improved from May to June?

**Myles McCormick (CFO & COO):**  That's right. It did and May was sort of the lowest point of the quarter. And then if you look at it, April is the highest point of the quarter, followed by May the lowest point. June stabilizing out sort of the business, back up to sort of some of the levels we were seeing back in April.

**Janet Kloppenburg (JJK Research analyst):**  But June went back up to April's level?

**Myles McCormick (CFO & COO)**: Directionally it did, that's correct. And so subsequently we're running off of those levels for the balance of the year. That's what it's looking like.

**Janet Kloppenburg (JJK Research analyst)**: So it's slowed again is what you're telling us here in the third quarter?

**Myles McCormick (CFO & COO)**: We'll be slower on a sequential basis than it was in Q2, that's correct.

26.    The next day, in response to the Company's announcement that its infomercial sales were weakening, the price of Bare Escentuals common stock fell $3.55 per share, or approximately 13%, to close on August 2, 2007, at $24.75 per share, on extremely heavy trading volume.

27.    On October 31, 2007, Bare Escentuals issued a press release announcing its financial results for the third fiscal quarter ended September 30, 2007. The Company reported net sales of $126.6 million and net income of $20.5 million, or $0.22 per diluted share, on approximately 93.2 million shares outstanding. The press release included comments by Defendant Blodgett, who stated the following concerning the Company's financial performance:

The third quarter marked another quarter of strong sales growth and increased profitability. Our strong financial performance reflects our continued ability to increase brand awareness, execute alongside our retail partners and expand our points of presence both domestically and abroad. As we look to our next stage of growth, we remain committed to our multi-channel distribution model to educate consumers of the benefits of mineral-based makeup and extend the reach of the Bare Escentuals brand worldwide.

With regard to the Company's guidance, the press release stated, in pertinent part, as follows: Bare Escentuals is affirming its fiscal 2007 diluted earnings per share guidance of a range of $0.89 to $0.94 on approximately 93.2 million shares outstanding. For fiscal 2008, the Company expects sales growth to be in line with its long-term revenue growth target of between 20 to 25%. The Company also expects earnings to grow in line with its long-term earnings growth rate of roughly 25%, implying earnings per share in the range of $1.13 to $1.18 per diluted share.

28.    Also on October 31, 2007, the Company held a conference call with investors   and analysts to discuss the Company's third quarter financial results.

1  During the call, Defendant Blodgett stated the following with regard to the

2  Company's infomercial business:

> Our infomercials business has also been an important driver of overall
> brand awareness in addition to being a profitable customer acquisition
> channel. We believe that our strong results at retail reflect the
> educational and brand-building benefits of the infomercial, and that will
> continue to be strategically important as brick and mortar retail drive our
> next stage of growth. This year; however, we've had some challenges
> with our infomercial. We launched a new show in May that did not
> perform to our expectations. We have since tested various reedits of the
> program including a recent version in September that included new
> footage. But our efforts have not yielded improved results. After a full
> evaluation, we recognize that this show (inaudible) made us successful
> in the past. The infomercial has always been about telling a focused
> story about Bare Minerals foundation to women with skin issues. This
> time we tried to appeal to a much broader audience and spent too much
> time telling the story of the Bare Escentuals brand and not enough time
> communicating what makes our foundation so unique and so effective.

12       29.    In response to the Company's announcement of continued weakness in

13  its infomercial business, Bare Escentuals common stock fell $2.24 per share, or

14  approximately 8%, to close on October 31, 2007 at $24.70 per share, on extremely

15  heavy trading volume.

16       30.    On November 26, 2007, Bare Escentuals issued a press release

17  announcing the resignation of Diane Miles, the Company's President of Wholesale

18  and International Sales.

19       31.    In response to the foregoing announcement, shares of the Company's

20  stock fell $3.42 per share over the next two trading days, to close at $19.75 per share

21  on November 28, 2007.

22       32.    On November 29, 2007, the Company issued a press release "reiterating

23  the Company's previously issued fiscal 2007 diluted earnings per share guidance of

24  a range of $0.89 to $0.94 on approximately 93.2 million shares outstanding and its

25  fiscal 2008 diluted earnings per share guidance of a range of $1.13 to $1.18."

26       33.    On February 26, 2008, Bare Escentuals issued a press release

27  announcing its financial results for the fiscal fourth quarter and full year ended

28

---

CLASS ACTION COMPLAINT

December 30, 2007. The Company reported net sales of $144.6 million and net income of $27.0 million, or $0.29 per diluted share on approximately 93.3 million shares outstanding. Defendant Blodgett, commenting on the Company's performance during the quarter, stated in pertinent part as follows:

> We are very pleased with our fourth quarter financial results as we experienced continued strong brand momentum. We attribute our performance to the great efforts put forth by our retail partners, suppliers, employees and, of course, the loyal community of Bare Escentuals customers. We intend to continue to build upon this momentum in 2008 by expanding our product offering and by increasing access to Bare Escentuals products both here and abroad.

The February 26, 2008, press release stated the following with regard to the Company's revenue guidance:

> For fiscal 2008, the Company continues to expect sales to grow in the range of 20% to 25% compared to fiscal year 2007 and diluted earnings per share to be in the range of $1.13 to $1.18.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Bare Escentuals common stock between November 7, 2006 and November 26, 2007, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bare Escentuals common stock was actively traded on the Nasdaq. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed

Class. Record owners and other members of the Class may be identified from records maintained by Bare Escentuals or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    Whether statements made by defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Bare Escentuals; and

(c)    To what extent the members of the Class have sustained damages and the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

---

1

**UNDISCLOSED ADVERSE FACTS**

2      40.    The market for Bare Escentuals securities was open, well-developed and

3  efficient at all relevant times. As a result of these materially false and/or misleading

4  statements, and/or failures to disclose, Bare Escentuals securities traded at artificially

5  inflated prices during the Class Period. Plaintiff and other members of the Class

6  purchased or otherwise acquired Bare Escentuals securities relying upon the integrity

7  of the market price of the Company's securities and market information relating to

8  Bare Escentuals, and have been damaged thereby.

9
       41.    During the Class Period, defendants materially misled the investing
10
   public, thereby inflating the price of Bare Escentuals securities, by publicly issuing
11
   false and/or misleading statements and/or omitting to disclose material facts
12
   necessary to make defendants' statements, as set forth herein, not false and/or
13
   misleading. Said statements and omissions were materially false and/or misleading
14
   in that they failed to disclose material adverse information and/or misrepresented the
15
   truth about Bare Escentuals' business, operations, and prospects as alleged herein.
16

17      42.    At all relevant times, the material misrepresentations and omissions

18  particularized in this Complaint directly or proximately caused or were a substantial

19  contributing cause of the damages sustained by Plaintiff and other members of the

20  Class. As described herein, during the Class Period, defendants made or caused to

21  be made a series of materially false and/or misleading statements about Bare

22  Escentuals' financial well-being and prospects. These material misstatements and/or

23  omissions had the cause and effect of creating in the market an unrealistically positive

24  assessment of the Company and its financial well-being and prospects, thus causing

25  the Company's securities to be overvalued and artificially inflated at all relevant

26  times. Defendants' materially false and/or misleading statements during the Class

27  Period resulted in Plaintiff and other members of the Class purchasing the Company's
28

securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

43. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Bare Escentuals common stock and operated as a fraud or deceit on Class Period purchasers of Bare Escentuals common stock by failing to disclose to investors that the Company was experiencing weakness in its infomercial business. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Bare Escentuals common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Bare Escentuals common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

44. By failing to disclose to investors that the Company was experiencing weakness in its infomercial business, defendants presented a misleading picture of Bare Escentuals' business and prospects. Defendants' false and misleading statements had the intended effect and caused Bare Escentuals common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $42.99 per share on May 30, 2007.

45. As a direct result of information disclosed on August 1, 2007, October 31, 2007 and November 26, 2007, the price of Bare Escentuals common stock plummeted, falling from $28.30 per share on August 1, 2007 to $19.75 per share, or 30%, on November 28, 2007. These drops removed the artificial inflation from the price of Bare Escentuals common stock, causing real economic loss to investors who had purchased Bare Escentuals common stock during the Class Period.

46.     The thirty percent decline in the price of Bare Escentuals common stock after these disclosures was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline in Bare Escentuals common stock negates any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Bare Escentuals common stock and the subsequent significant decline in the value of Bare Escentuals common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

## SCIENTER ALLEGATIONS

47.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Bare Escentuals, their control over, and/or receipt and/or modification of Bare Escentuals' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Bare Escentuals, participated in the fraudulent scheme alleged herein.

48.     Defendants were further motivated to engage in this course of conduct in order to allow defendants Blodgett and McCormick and other Company insiders

---

1  to collectively sell moer than 18 million shares of their personally-held Bare

2  Escentuals common stock for gross proceeds in excess of $644 million, as set forth

3  more fully in the following chart:

| COMPANY INSIDER | TRANSACTION DATE | SHARES | PRICE PER SHARE | PROCEEDS |
|---|---|---|---|---|
| LESLIE BLODGETT | 3/19/2007<br>3/19/2007<br>3/19/2007<br>3/19/2007<br>6/19/2007 | 695,169<br>210,000<br>210,000<br>105,000<br>500,000 | $33.03<br>$33.03<br>$33.03<br>$33.03<br>$35.77 | $22,961,432<br>$6,936,300<br>$6,936,300<br>$3,468,150<br>$17,885,000 |
| JOHN HANSEN | 3/19/2007<br>6/19/2007 | 1,341,184<br>823,672 | $33.03<br>$35.77 | $44,299,308<br>$29,462,747 |
| MYLES MCCORMICK | 6/19/2007 | 20,072 | $35.77 | $717,975 |
| LEA OTTINGER | 3/19/2007<br>6/19/2007 | 33,711<br>14,000 | $33.03<br>$35.77 | $1,113,474<br>$500,780 |
| KAREN ROSE | 6/19/2007 | 5,134 | $35.77 | $183,643 |
| GLEN SENK | 3/19/2007<br>6/19/2007 | 20,000<br>20,000 | $33.03<br>$35.77 | $660,600<br>$715,400 |
| Fifth Berkshire Associates LLC (Bloom, Jones) | 3/19/2007<br>3/19/2007<br>3/19/2007<br>6/19/2007<br>6/19/2007<br>6/19/2007 | 3,123,949<br>2,870,504<br>320,663<br>1,918,524<br>1,762,875<br>196,930 | $33.03<br>$33.03<br>$33.03<br>$35.77<br>$35.77<br>$35.77 | $103,184,035<br>$94,812,747<br>$10,591,499<br>$68,625,603<br>$63,058,039<br>$7,044,186 |
| JH MDB Investors, L.P. (Hansen, John) | 3/19/2007<br>6/19/2007 | 2,899,720<br>1,780,824 | $33.03<br>$35.77 | $95,777,752<br>$63,700,074 |
| JH Partners, LLC (Hansen, John) | 3/19/2007<br>6/19/2007 | 29,813<br>18,304 | $33.03<br>$35.77 | $984,723<br>$654,734 |
| **Total** | | **18,920,048** | | **$644,274,503** |

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET DOCTRINE

49.    At all relevant times, the market for Bare Escentuals common stock was an efficient market for the following reasons, among others:

(a)    Bare Escentuals common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    as a regulated issuer, Bare Escentuals filed periodic public reports with the SEC and the Nasdaq;

(c)    Bare Escentuals regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Bare Escentuals was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.    As a result of the foregoing, the market for Bare Escentuals common stock promptly digested current information regarding Bare Escentuals from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of Bare Escentuals common stock during the Class Period suffered similar injury through their purchase of Bare Escentuals common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

51.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded

---

1  in this complaint. Many of the specific statements pleaded herein were not identified
2  as "forward-looking statements" when made. To the extent there were any forward-
3  looking statements, there were no meaningful cautionary statements identifying
4  important factors that could cause actual results to differ materially from those in the
5  purportedly forward-looking statements. Alternatively, to the extent that the statutory
6  safe harbor does apply to any forward-looking statements pleaded herein, defendants
7  are liable for those false forward-looking statements because at the time each of those
8  forward-looking statements were made, the particular speaker knew that the particular
9  forward-looking statement was false, and/or the forward-looking statement was
10 authorized and/or approved by an executive officer of Bare Escentuals who knew that
11 those statements were false when made.
12

13

14                            **COUNT I**
15          **Violation of §10(b) of the Exchange Act and**
              **Rule 10b-5 Promulgated Thereunder**
16                   **Against All Defendants**

17      52.    Plaintiff repeats and realleges each and every allegation contained above
18 as if fully set forth herein.

19      53.    During the Class Period, defendants disseminated or approved the
20 materially false and misleading statements specified above, which they knew or
21 deliberately disregarded were misleading in that they contained misrepresentations
22 and failed to disclose material facts necessary in order to make the statements made,
23 in light of the circumstances under which they were made, not misleading.

24      54.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b)
25 made untrue statements of material fact and/or omitted to state material facts
26 necessary to make the statements not misleading; and (c) engaged in acts, practices,
27 and a course of business which operated as a fraud and deceit upon the purchasers of
28

---

CLASS ACTION COMPLAINT

the Company's common stock during the Class Period.

55.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Bare Escentuals common stock. Plaintiff and the Class would not have purchased Bare Escentuals common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

56.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Bare Escentuals common stock during the Class Period.

## COUNT II

### Violation of §20(a) of the Exchange Act
### Against the Individual Defendants

57.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.    The Individual Defendants acted as controlling persons of Bare Escentuals within the meaning of §20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Bare Escentuals, and their ownership of Bare Escentuals stock, the Individual Defendants had the power and authority to cause Bare Escentuals to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

///

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.


Dated: July 29, 2009                  **GLANCY BINKOW & GOLDBERG LLP**

                                      By: _____
                                         Lionel Z. Glancy
                                         Michael Goldberg
                                      1801 Avenue of the Stars, Suite 311
                                      Los Angeles, California 90067
                                      Telephone:   (310) 201-9150
                                      Facsimile:    (310) 201-9160

                                      **LAW OFFICES OF HOWARD G. SMITH**
                                      Howard G. Smith
                                      3070 Bristol Pike, Suite 112
                                      Bensalem, PA 19020
                                      Telephone:   (215) 638-4847
                                      Facsimile:    (215) 638-4867

                                      *Attorneys for Plaintiff*

SWORN CERTIFICATION OF PLAINTIFF

Bare Escentuals, Inc., SECURITIES LITIGATION

I, John Keeler, certify that:

1.  I have reviewed the complaint and authorized its filing.

2.  I did not purchase Bare Escentuals, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Bare Escentuals, Inc. during the class period set forth in the Complaint are as follows:

    I bought ___100___ shares on __7/12/07__ at $ _35_ per share.
    I bought ___75___ shares on __7/12/07__ at $ _35_ per share.
    I bought _____ shares on ___/___/___ at $ _____ per share.
    I bought _____ shares on ___/___/___ at $ _____ per share.
    I bought _____ shares on ___/___/___ at $ _____ per share.

    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.

    (List Additional Transactions on a Separate Page if Necessary)

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ____☐ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _7/27/09_

_____
(Please Sign Your Name Above)